GREGSON v. THE PEOPLES EXCHANGE COMPANY.

4-6760                                   162 S. W. 2d 485

Opinion delivered May 18, 1942.

*Horace Sloan* and *Frank Sloan,* for appellant.

*Lamb & Barrett* and *Frierson & Frierson,* for appellee.

HUMPHREYS, J.  On November 18, 1941, one of the appellees, W. H. Smith, brought suit in the chancery court of Craighead county, western district, against appellants on $1,000 note and against appellant, B. F. Gregson, for the balance due upon a $5,815 note. It was alleged in the first count of the complaint that on May 9, 1939, appellants executed their note to the Citizens Bank of Jonesboro, Arkansas, for $1,000 due December 1, 1939, with interest from maturity at 10 per cent. per annum until paid; that said note was assigned to appellees and is unpaid; that appellants executed on the same date a second mortgage on certain lots in Bono, Arkansas, which was their homestead and a first mortgage on their automobile to secure said note and prayed for a judgment against them on the note and a foreclosure on the mortgage to pay same.

And he alleged in the second count of his complaint that appellant, B. F. Gregson, executed another note for $5,815 to the Citizens Bank of Jonesboro, Arkansas, payable on demand, or if no demand be made, on the 15th day of October, 1939, with interest from maturity until paid at 6 per cent. per annum; that, with the exception of certain credits, the note is unpaid and that appellee, W. H. Smith, is the owner of same; and he prayed judgment against B. F. Gregson for $4,577.25, with interest. There was a prayer for costs and all other proper relief, and for consideration of the two others in the complaint as one suit.

On December 4, 1940, appellants answered the complaint denying all the material allegations thereof, and alleged that appellee, W. H. Smith, was not the owner of the note and mortgage set out in count one; that said instruments never became operative, that they were not supported by consideration; that there was a failure of consideration therefor and they incorporated in their answer the allegations of the cross-complaint hereinafter set out. The answer further alleged that appellee, W. H. Smith, was not the owner of the note described in count two of the complaint, incorporated therein the allegations of the cross-complaint hereafter set out, and averred that the note was intended to express the correct amount of an overdraft due by appellant, B. F. Gregson, to Peoples Exchange Company, Bono, Arkansas; that the said note was illegal; that said note had been paid by 1939 and 1940 operations of a gin known as the Caraway Gin by H. H. Smith and by other payments. There was a prayer for judgment and costs in the answer.

For counter claim against appellee, W. H. Smith, and cross-complaint against Peoples Exchange Company, H. H. Smith, Teresa J. Smith, his wife, and S. V. McKinney, as cross-defendants, the appellants alleged:

1. That Peoples Bank Company of Bono, Arkansas, had no power to loan money; that its corporate name was changed on June 6, 1939, to Peoples Exchange Company; that H. H. Smith was president and Ray L. Stevens secretary of said banking company.

2. That H. H. Smith is the son of W. H. Smith and Teresa J. Smith the wife of H. H. Smith, joined because of possible dower interest in property involved.

3. That J. L. Craft contracted in writing to sell a certain described cotton gin, referred to as the Caraway Gin Co., to B. F. Gregson, in 1938, subject to the $5,000 deed of trust to Buckeye Cotton Oil Company, for a total purchase price of $10,000 ($5,000 thereof by assumption of said deed of trust, and balance of $5,000 to be paid to Craft), payments to be made as bales were ginned at said gin at rate of $2.50 per bale, deed of trust to be paid before Craft was to receive any payment.

4. That Gregson paid about $1,400 during 1938 on said deed of trust; that the original contract of purchase by Gregson had been lost; that Gregson spent several hundreds of dollars repairing the said Caraway Gin; that Gregson had, by permission of Peoples Bank Company of Bono, Arkansas, created during the 1938 ginning season an overdraft of around $4,000; that said bank had no power to loan its deposits; that Gregson had never been returned his checks or statements and did not know the exact amount of the overdraft. Demand that original records be produced by said bank.

5. That about May 9, 1939, H. H. Smith, president, and Ray Stevens, secretary, demanded that Gregson pay at least $1,000 on his overdraft; that said parties went to Citizens Bank of Jonesboro and applied for a $1,000 loan; that S. V. McKinney, vice-president of Citizens Bank, advised that loan papers be executed and he would try to get the said bank's loan committee to approve such a loan; that the notes and mortgage were made and delivered to Citizens Bank; that Citizens Bank did not make the loan; that no consideration was paid for the note and there was a complete failure of consideration.

6. That later H. H. Smith presented to Gregson a printed note form and asked him to sign it, stating that he was going to fill it in for the exact amount of the overdraft to keep the bank examiners from getting on him; that it was filled in by Smith for an incorrect

amount; demand that cross-defendants produce original records to establish correct amount; that note was illegal.

7. That, in the spring of 1939, H. H. Smith, as president, and Ray L. Stevens, as secretary of Peoples Bank Company, asked Gregson in presence of J. L. Craft to turn over the Caraway Gin to be operated by H. H. Smith for the said bank, all profits to be applied to overdraft until it was paid, and then the gin to be returned to Gregson; Gregson agreed with consent of Craft, his vendor; that H. H. Smith took charge of the said gin, operating it during 1939 and 1940, making during 1939 about $4,000, and during 1940, about $5,000; that no profits were applied to the said overdraft, but were instead wrongfully converted to his own use by H. H. Smith in violation of his agency.

8. That before July 3, 1939, but after the foregoing agreement, J. L. Craft traded to S. V. McKinney the balance due upon the purchase price by Gregson, McKinney thereby becoming the owner of the said balance.

9. That Craft and wife made a deed of the gin to H. H. Smith, without Gregson's knowledge, on July 3, 1939, making correction deed to same on January 2, 1940. Smith made notes to McKinney totaling $12,000 for McKinney's advances of money to pay Buckeye Cotton Oil Company debt, new improvements and assumption of purchase money debt assigned by Craft to McKinney with 6 per cent. interest per annum, H. H. Smith and wife, Teresa J. Smith, making mortgage to secure said notes on July 3, 1939, and correction mortgage on January 13, 1940; that all of this was done without Gregson's knowledge.

10. That W. H. Smith, under certain parol agreement, paid off deposit claims of Peoples Exchange Company and assumed control of assets of Peoples Exchange Company.

11. That the $1,000 note in suit never became an asset of said bank; that H. H. Smith, as agent for W. H. Smith, told S. V. McKinney in August or September, 1940, that the note belonged to his father, and McKinney,

in reliance thereon, indorsed it without recourse; that W. H. Smith was not a holder in due course and there was complete failure of consideration.

12. That the correct amount of the overdraft, if it is held recoverable, should be ascertained by the court; that Peoples Exchange Company, W. H. Smith and H. H. Smith should be required to credit the profits from operation of Caraway Gin on the overdraft, and pay over any balance to B. F. Gregson; or, in the alternative, that all of the profits should be paid to B. F. Gregson.

13. That H. H. Smith be found to have violated his duty by taking Caraway Gin deed to himself and be declared a trustee for Gregson; that legal title be divested from him and vested in B. F. Gregson; that, since H. H. Smith has converted the equity in the gin property to his own use, a receiver should be appointed.

The prayer of the cross-complaint was: (1) that note and mortgage in count one of complaint be canceled as having no legal effect, and for the reason that appellee, W. H. Smith, was never the owner of same; (2) that note in count two of complaint be canceled; that overdraft be held illegal and not recoverable, but if recoverable that its exact amount be determined; that Peoples Exchange, W. H. Smith and H. H. Smith be required to account for and credit the overdraft, not only the payments thereon, but also the 1939 and 1940 gin profits from operation of the Caraway Gin; that the cross-complainants have judgment against them with interest for excess of said profits over the overdraft; or, in the alternative, judgment for full amount of profits with interest; (3) that cross-complainant, B. F. Gregson, be declared equitable owner of Caraway Gin and H. H. Smith constructive trustee of same; that title be divested out of H. H. Smith, with possible dower of Teresa J. Smith, and vested in cross-complainant, B. F. Gregson; (4) that S. V. McKinney be required to answer and state balance remaining unpaid on his mortgage to determine its status; (5) that a receiver be appointed; (6) that cross-complainants have decree for costs and all other proper relief.

An answer was filed to the cross-complaint denying each and every material allegation thereof.

The cause was submitted to the court upon the complaint, answer, counterclaim and cross-complaint, the answer to the cross-complaint, the testimony introduced in the form of depositions by the respective parties and the exhibits to the pleadings and testimony.

Exhibit "A," appearing in the record, relates to a sale of the Caraway Gin by J. L. Craft to B. F. Gregson and is as follows:

"Exhibit A. Contract entered into on July 28, 1938, between J. L. Craft, first party, and B. F. Gregson, second party.

"First party, upon payment of consideration hereinafter set out, agrees to transfer gin premises referred to as P. S. Osborne Gin (specifically described) to second party. In consideration of such sale, second party promises to pay first party the sum of $10,000, payable as follows:

" 'The entire sum of $10,000 shall be payable weekly during the ginning season at the rate of $2.50 per bale for each and every bale of cotton ginned at said gin premises. The deferred portion of the purchase price shall bear interest from this date until paid at the rate of 8 per cent. per annum and said payments shall continue for such period as will be required for paying said $10,000 with interest at the rate of $2.50 per bale for all cotton ginned on said premises. Default in the payment of said $2.50 per bale as herein provided shall entitle first party or his assigns to declare the remaining portion of the purchase price due and payable immediately and to take possession of the premises. Receipt of $1 of the above referred to purchase price is this day acknowledged.'

"Second party agrees to pay taxes and to insure gin and equipment with whatever company and for whatever amount is agreeable to both parties.

"It is understood that there is a first mortgage on said gin equipment to the Buckeye Cotton Oil Company, in the sum of $5,000, which first party agrees to pay. If first party fails to pay as agreed, second party shall be credited upon the purchase price for any sum he may be

required to pay. The Buckeye Cotton Oil Company to have the refusal of any cotton seed sold from the gin.

"While possession is this day delivered to second party, he to have exclusive control, management, and direction of said gin property in the future, title shall not become absolute in him until the purchase price is paid in full, but shall be and remain in first party.

"Should second party fail to keep premises insured, to pay premiums or to pay taxes, such default shall entitle first party to accelerate due date of remaining portion of the purchase price, or pay such insurance and taxes, or either, and apply net proceeds paid by second party towards reimbursement.

"Witness our hands and seals in duplicate the date hereinabove mentioned.

"J. L. Craft, First Party.

"B. F. Gregson, Second Party."

Exhibit "B," appearing in the record, is a modification of the contract, which is as follows:

"This contract today made and entered into by and between J. L. Craft, as first party, and B. F. Gregson, as second party, witnesseth:

"Whereas, on July 28, 1938, the parties entered into a written contract pertaining to one acre of land and a cotton gin and equipment located at Caraway in Craighead county, Arkansas, and in which contract it is provided . . . that the second party shall pay to the first party, weekly, $2.50 per bale for each and every bale of cotton ginned at said gin, same to be applied to the payment of an indebtedness of $10,000 owing by the second party to the first party, and

"Whereas, it is recited in said contract that said property is subject to a deed of trust executed by the first party and his wife to Leslie Gardner as trustee for the Buckeye Cotton Oil Company for the sum of $5,000, and which indebtedness remains unpaid, and

"Whereas, the parties hereto now desire to modify the provisions of said contract to such effect that instead of the second party paying to the first party $2.50 per

bale weekly for each and every bale of cotton ginned, the second party will sell and ship to said Buckeye Cotton Oil Company at Memphis, Tennessee, all cotton seed originating and accumulating at said gin and that the net proceeds thereof sufficient to pay to said Buckeye Cotton Oil Company two notes for $1,000 each due in the fall of 1938 owing by the first party to said Buckeye Cotton Oil Company, and that after the full payment of said two $1,000 notes and interest out of the proceeds of the sale of said cotton seed then the second party will pay to the first party $2.50 weekly per bale for each and every bale of cotton ginned by the second party at said gin, provided, it is understood by the parties hereto that if the second party do not gin as many as 800 bales of cotton at said gin during the ginning season of 1938, then the above payments shall be reduced proportionately as between said 800 bales and the number of bales actually ginned.

"It is agreed that said contract dated July 28, 1938, is not modified or amended to greater extent than as herein specifically stated, and that in all other respects said contract shall continue and remain as written.

"Witness our hands this 6th day of August, 1938.

"J. L. Craft, First Party.

"B. F. Gregson, Second Party."

Based upon the pleadings, testimony and exhibits to both, the trial court on January 6, 1942, found:

"That appellee, W. H. Smith, should recover $1,000 with interest at ten per cent per annum from December 1, 1939, from appellants, B. F. Gregson and Vada Gregson; that said sum is a lien, subject only to a first lien of Citizens Bank of Jonesboro, upon certain lots in Bono, Arkansas; that said lien should be foreclosed and the property sold subject to the first lien; that said judgment is also a lien upon a certain Chevrolet sedan, which should be foreclosed."

The court then rendered a decree in favor of appellee, W. H. Smith, against appellants, B. F. Gregson and Vada Gregson, for the sum of $1,000 with interest from

December 1, 1939, until paid, at 10 per cent. per annum; that said sum is declared a lien upon certain lots in Bono, Arkansas, and upon a certain Chevrolet sedan, which is hereby foreclosed, including dower- and homestead rights of Vada Gregson.

The decree then provided for a sale of the mortgaged property subject to a first mortgage thereon, in favor of the Citizens Bank of Jonesboro, to satisfy the judgment if same were not paid in 20 days and also provided the manner of sale in detail.

The court further found that B. F. Gregson is indebted to the appellee in the sum of $4,577.25 with interest at 6 per cent. per annum from October 15, 1939, being the balance due upon a certain promissory note made by B. F. Gregson on April 1, 1939, to the Citizens Bank of Jonesboro, and decreed that appellee, W. H. Smith, have and recover from appellant, B. F. Gregson, the sum of $4,577.25 with 6 per cent. interest from October 15, 1939, until paid.

Appeal has been duly prosecuted to this court from the findings and decree of the trial court.

Testimony, in the form of depositions, was introduced responsive to practically every issue joined in the pleadings except the issue joined as to whether the Peoples Exchange Company, W. H. Smith and H. H. Smith should be required to account for and credit the overdraft with profits from the operation of the Caraway Gin in the year 1939 and subsequent years and whether the title to the Caraway Gin be divested out of H. H. Smith and vested in B. F. Gregson. Upon these issues the testimony was not fully developed until the issue of liability upon the counterclaim and cross-complaint was finally determined by the court.

The record in this case reflects that the "Peoples Bank of Bono," Arkansas, was a cooperative bank, organized under the Act of 1921. The act was amended in 1937 by the legislature so as to require the bank to change its name and the name was accordingly changed to the "Peoples Exchange Company." All the stock in the Peoples Bank of Bono, the name of which was subsequently

changed to that of the Peoples Exchange Company of Bono, was acquired by Ray L. Stevens who operated the institution individually for quite a while. He then sold one-half interest in the institution to H. H. Smith in 1937, and it was operated after that time by the two of them. During the operation of the institution appellant, B. F. Gregson, who had purchased the Caraway Gin in his own name and an undivided interest in what was known as the Shady Grove Gin, became indebted to the institution by overdrafts and executed a note to the Citizens Bank of Jonesboro on blanks of the Citizens Bank of Jonesboro in the sum of $5,815, which note matured October 15, 1939. This note was intended for and delivered to the Peoples Exchange Company and became in fact one of its assets. The institution was in need of ready money and B. F. Gregson, who was very friendly to the institution and desired to help it out, agreed that he and his wife would execute a second mortgage on their homestead in Bono and their Chevrolet sedan to the Citizens Bank of Jonesboro who indicated that they would lend them $1,000 to pay upon the note covering the overdraft. This note and mortgage was executed on May 9, 1939, by B. F. Gregson and Vada Gregson, his wife, to the Citizens Bank of Jonesboro, maturing December 1, 1939, and same was delivered to Ray Stevens for the purpose of getting $1,000 in cash from the Citizens Bank of Jonesboro and applying the same on the overdraft note. When Stevens offered the note to the Citizens Bank of Jonesboro the directors refused to make the loan on the ground that it was a second mortgage on real estate and Stevens then took the note to his own institution and placed it in a box and entered a credit on the overdraft note for $1,000.

Appellants contend that since the Citizens Bank of Jonesboro would not accept the note and mortgage and pay Stevens the actual money for same, Stevens or his institution had no right to treat it as the property of his institution and credit the overdraft note with the amount. The sole purpose on the part of B. F. Gregson and Vada Gregson in executing the note and mortgage was to obtain a credit on the overdraft note for $1,000. After

the note and mortgage were executed they were turned over to Stevens and as the Citizens Bank of Jonesboro would not lend the money he placed the note and mortgage in his bank as an asset thereof and gave the credit on the overdraft note for the entire amount. No fraud was practiced on B. F. Gregson and Vada Gregson, his wife, and no injury done to them. They received the consideration for which the note and mortgage were executed when the credit of $1,000 was entered upon Gregson's note covering the overdraft, so we cannot agree with learned counsel for appellants that appellants received no consideration for the note and mortgage. We think that appellants are clearly estopped from interposing no consideration as a defense to the note and mortgage. To hold otherwise would put form above substance. Again, there would be no equity in canceling the note and mortgage as the undisputed evidence shows that at least $600 of the money constituting the overdraft was used to build the dwelling claimed as the homestead.

The trial court did not, therefore, err in refusing to cancel the note and mortgage and in rendering a judgment for the amount and a decree of foreclosure against the homestead subject to another mortgage thereon and in foreclosing the lien against the automobile.

Appellants next contend that the trial court erred in rendering a judgment for the balance due on the overdraft note for a number of reasons. One reason assigned is that the note was executed to the Citizens Bank of Jonesboro and not to the Peoples Exchange Company. This is a technical defense without merit to sustain it. All the evidence shows that the overdraft note was the property of the Peoples Exchange Company. The record reflects that the error occurred on account of using blanks of the Citizens Bank of Jonesboro. The Citizens Bank of Jonesboro was very friendly to the Peoples Exchange Company and assisted it in many ways. Although the two institutions operated independently of each other it would not be an unreasonable inference under the record made in this case to denominate the Peoples Exchange Company as an adopted child of the Citizens Bank of Jonesboro. Another reason assigned is that the note

was executed in blank with the understanding that the correct amount of the overdraft would be inserted in same. Our conclusion, after reading the evidence very carefully, is that it was completely executed when delivered, including the correct amount of the overdraft. It is true that a representative of the banking department, at the request or demand of appellants, examined the books of the Peoples Exchange Company and found several small errors in arriving at the amount of the overdraft of which B. F. Gregson should have a credit of $321.30. The representative of the banking department, Mr. Winters, explained how these errors were made, none of which indicate that any fraud was practiced upon Gregson in determining the amount of the overdraft covered by the overdraft note. Attorneys for appellees state in their brief, on page 51, that: "If this court deems it proper to accept the testimony of the accountant and give Gregson credit for the trifling difference we will not complain, but by this concession we certainly do not concede that the amount of the note really is subject to attack, in view of all the various elements of ratification and estoppel shown in this case."

It may be the accountant is correct and, since attorneys for appellees do not object, we will modify the decree by allowing a credit of $321.30 with interest thereon at 6 per cent. per annum from the date of the overdraft note. We do not think under the record made in this case that the court erred in giving W. H. Smith judgment for the balance due on the overdraft note on the theory that the Peoples Exchange Company did not own the note. Of course, if the Peoples Exchange did not own this note, W. H. Smith was not entitled to a judgment on same. He was not an innocent purchaser of the note for value before maturity. He took the note as well as the $1,000 note subject to all the defenses appellants had to the note or notes against the Peoples Exchange Company. There is no question under the record made that W. H. Smith paid a complete and adequate consideration for the assets of the Peoples Exchange Company. The representative of the bank commissioner had listed the two notes as assets for the Peoples Exchange Company and

W. H. Smith paid $7,573.84 with which to pay off the depositors of the bank except his own deposit and that of the Stevens family. He refused to pay this amount over until all parties interested in the Peoples Exchange Company waived any and all interest they might have in the bank. Appellants argue that W. H. Smith got nothing for the reason that the bank commissioner did not take over the Peoples Exchange Company and administer same through the chancery court. The Peoples Exchange Company was not taken over by the bank commissioner for the reason that W. H. Smith paid all the depositors and obtained waivers from all parties interested in the Peoples Exchange Company and there was no necessity for an administration of the affairs of the Peoples Exchange Company. In fact this institution was never declared insolvent. The affairs of the bank were settled with the aid and assistance of the bank commissioner and everyone interested therein, so we do not think appellants could interpose the defense against the collection of the note or notes the manner in which the affairs of the Peoples Exchange Company were wound up.

The only other contention of appellant, B. F. Gregson, that the trial court erred in rendering judgment on the overdraft note against him is that it was the duty of the Peoples Exchange Company under his agreement with it or its two owners that it would take over and manage the Caraway Gin and apply the profits thereon to the payment of the overdraft, and that if it had applied the profits earned by H. H. Smith to the payment of the overdraft it would have more than liquidated same. In other words, it is the claim of B. F. Gregson that he owned an equity in the Caraway Gin under his purchase contract thereof from J. L. Craft at the time he delivered the Caraway Gin to H. H. Smith, which had never been foreclosed against him. The record is so conflicting upon how this equity in the Caraway Gin got out of B. F. Gregson and how his interests or equity got into H. H. Smith that it is impossible to draw any correct conclusion relative to the matter. The record reflects that B. F. Gregson's management of the Caraway Gin, after he purchased it from J. L. Craft, was a losing proposition

in its operation. B. F. Gregson never paid any part of the purchase money and only about $1,500 on the $5,000 mortgage to the Buckeye Cotton Oil Company and during his management accumulated or became responsible for an overdraft to the Peoples Exchange Company for about $5,815 and a few hundred dollars in the way of repairs. The Caraway Gin was more or less an elephant on his hands so it is not surprising that he got rid of it. This contract of purchase and modification thereof was not in the nature of a deed and was not on the record. He could have voluntarily surrendered it to J. L. Craft in satisfaction of the purchase money he owed. According to the record the legal title to the Caraway Gin is in H. H. Smith by deed from J. L. Craft and Teresa Craft, his wife. That deed incorrectly described the property and another was made on January 2, 1940, by J. L. Craft and his wife, correcting the description. According to the record, J. L. Craft owned the legal title to the property by deed from P. S. Osborne and wife to Craft, dated January 11, 1937, which deed contained a vendor's lien, but this lien seems to have been paid on March 8, 1938. The gin property was subject to a deed of trust from J. L. Craft and wife for the benefit of the Buckeye Cotton Oil Company for $5,000. On July 3, 1939, H. H. Smith executed a mortgage to S. V. McKinney for $12,000 on the gin. The proceeds of this mortgage or a part of the proceeds was used to satisfy the mortgage to the Buckeye Cotton Oil Company and to make valuable improvements on the Caraway Gin. We have concluded that B. F. Gregson voluntarily surrendered all his equitable rights in the Caraway Gin under purchase from J. L. Craft and that it was then sold to H. H. Smith. We do not think it was turned over to H. H. Smith for the purpose of operating it and applying the net profits on the overdraft and then to turn the Caraway Gin back to Gregson. If this had been the understanding certainly Gregson would not have executed a mortgage on his homestead towards the liquidation of the overdraft, and certainly H. H. Smith would not have expended a large sum of money in making extensive improvements on the gin and most certainly would not have given a mortgage for $12,000 upon the

gin. If H. H. Smith had taken the Caraway Gin over to operate it for the benefit of B. F. Gregson and apply the net earnings on the overdraft, it is quite certain he would have demanded that they be credited on the overdraft before he executed a note to cover the entire amount of the overdraft and before he executed a note for $1,000 and mortgage on his homestead to apply upon the overdraft. On the contrary, immediately after turning the possession of the Caraway Gin over to H. H. Smith he left the community to seek employment and took no further interest in the operation of the Caraway Gin and no interest in whether it made money or lost money. It seemingly never occurred to him to claim that he turned the Caraway Gin over to H. H. Smith for the purpose of running it and paying the net proceeds on his overdraft until after he was sued upon the notes, by W. H. Smith. Four or five disinterested witnesses testified that about the time Gregson turned the Caraway Gin over to H. H. Smith they were told by B. F. Gregson that he had sold his interest in the Caraway Gin and that anyone desiring employment at the gin would have to see H. H. Smith. It is true that the trial court in his opinion found that B. F. Gregson had forfeited his rights or equity under his purchase contract of the gin from J. L. Craft. Of course, equity abhors forfeitures and there is nothing in the contract and modification thereof providing for a forfeiture. Rather than to have found that B. F. Gregson had forfeited his equity under the contracts he should have found and said that B. F. Gregson voluntarily surrendered his contract in settlement of the purchase money and to relieve himself from the payment of the outstanding debts he had assumed in the contract against the Caraway Gin.

We think, after a thorough consideration of all the testimony, that the trial court reached the correct result and rendered a decree in keeping with the preponderance of the evidence. The judgment and foreclosure decree against B. F. Gregson and Vada Gregson, his wife, is in all things affirmed and the judgment against B. F. Gregson is modified by allowing a credit of $321.30, and as modified, is affirmed, and otherwise in all things affirmed.